I think we're officially there. I'm representing Timothy Caruso. He has been charged, or was charged with the access with intent to view child pornography on or about December 19th, 2018 to December 24th, 2018. Cut to the chase. It was 20, the date of the upload is alleged to be December 24th, 2018. I think that that's probably a proper date to consider. He had been indicted, he was indicted for knowingly distributing child pornography and he had, count one, count two, knowingly accessed child pornography to view a single image of child pornography. In that case, it was December 19th, but really the date, I think, was December 24th, 2018, when the image basically appeared and it appeared in a cyber report, which is exhibit number one. And exhibit number one is, I think, a significant exhibit because from this exhibit, everything sort of flows. For example, and trying to get to the issue here, exhibit number one has, in fact, identifies in this cyber report that the incident was child pornography, that the name of the user, the person being reported was Charlie Hustle, email was tgru, so I guess 132,000 at email.com. The screen name was Mr. Charlie Hustle and the profile URL was a pin arrest profile of Charlie Hustle. So pin arrest has an account for Charlie Hustle and that's basically, in effect, the upload that occurs then. Then to go to what other tips they want to give is the IP address. In this case, that image was uploaded and the IP address was 68132423. We'll call it 23 as we go on because there are two other IP addresses involved. And that IP address then was also referenced later on with the second IP address, which was 72215221.45, and we'll call it 45. What immediately happens is that this goes out to law enforcement. Law enforcement, in this case, are aware that those IP addresses went to Cox Cable. Cox Cable then is inquired, if not subpoenaed, to, in effect, identify who the user is, and that was pretty critical in this case because no one knew the name but didn't know the user. So these two IP addresses identify the user. One is a man named Douglas Rohrer. The other is the AMCO, in effect, station also. Now, so at this point, the police are involved, Agent Morrissey is involved, and he determines that, in effect, he'll look at the house where Mr. Rohrer is. So he looks at the house where Mr. Rohrer is. He finds out Mr. Rohrer's there with Mrs. Rohrer and their children. And also, there's another person in the house, and he is the defendant. And he looks into the defendant and he determines, this guy may be of some interest. Let me put it that way. Rohrer might be of some interest because they have a longstanding relationship. He has been living in that, at least at one time, at the time of the incident, was living in Mr. Rohrer's house. AMCO is a station that was operated by Mr. Rohrer. So we have Mr. Rohrer operating the AMCO station where the IP address, and also, the evidence is that, for a period of time, the defendant worked for Mr. Rohrer in the AMCO station. So at that point, we then, Mr. Morrissey issues three subpoenas. He issues a subpoena to Google because he finds that the defendant has a Google account. He issues one to the then address of the defendant, which I call the 4th Street address, and one to Pinterest. The Pinterest account turns up four facts on what, in effect, would be Charlie Hustle. Okay? These are set forth in Exhibit 3, Exhibit 4, Exhibit 5, and Exhibit 6. And these are the critical factors for us, at least on the issue of overriding the jury. And we can call it whatever you want, but if you . . . Is there any doubt that Mr. Caruso and Charlie Hustle and Mr. Charlie Hustle are the same? Probably no doubt that they are the same in the sense that, well, whatever doubt there would be would have to be, I think, favorably resolved by the evidence, which is circumstantial. So there is doubt because he doesn't admit it. It's not admitting that he is Charlie Hustle. But it is a little suspicious that it's connected to a Google email address that says, that has his name in it, P. Caruso, whatever it is. No, there's no question about that. Because the issue here is not, frankly, that, at least for the defense. The issue is, what did he do? What did he access? Did he access this image? Our position is, there's not a shred of evidence, direct evidence . . . Well, was he the only person at the IP address on the dates and times when the pin interest count was created and the image distributed? I would argue no. The government will argue yes, because the only other person, it was a holiday. And he didn't go to the Amico station and wasn't at home. The opportunity to be at home was there, definitely. And the interesting thing here is that the agent does not subpoena his records. He has an account. He has accounts. Mr. Rohr has accounts. None of those are subpoenaed. And the reason they aren't subpoenaed is, the agent has made up his mind that the defendant is the guy, because they looked at his record. He's the guy. Well, at that point, everything focuses on him. Our position basically is that there is no direct evidence that shows that he uploaded and no, that nothing that he transported. There isn't a soul, a bit of evidence that says it was even transported. Well, it was put in a shared file. I'm sorry, Chief. Well, I was just going to clarify what you meant by transported. You mean made available for someone else to constitute distribution? Is that what you're referring to by transported? I would . . . It was, there's no evidence that it was distributed. Let me put it that way. Well, Counselor, it was put in a shared folder or a shared file, right? No, I don't . . . I thought there was evidence clearly it went in a shared folder or a shared file. I don't call it a shared file. I call it an opportunity to, in Pinterest, there's an opportunity for other people to see it. You know, I'm not, I don't think he put it there. Okay. It's there. It was there for the world to see. If no, if he had never been involved, it would have been there. In other words, I think you've got to, he's got to, he's got to do an overt act here. He's got to acknowledge that he received it and somebody else got it. Suppose, you know, we think he uploaded or there's enough to conclude that he uploaded it. Would you agree that there were some other users that had access to that file? I think you're saying yes. At least Redact, gosh, that's a weird name. Redact, I don't even know how to say it. But there was another user who seemed to be in control of that particular, that particular board. Well, I think there were other, there's other conversations that well could have been involved. I'm not so sure it goes with that particular board. That's the government's position. The government goes into a lot of detail about that. And I've got to save some time, but I'll let the government come forward. Thank you, Mr. Bradford. Thank you. Okay. Ms. Perdis-Steinholt? Oh, sorry. Thank you. May it please the Court, my name is Mikayla Perdis-Steinholt and I represent the United States in this matter. The district court correctly determined the two issues at issue, before the court today. That being there was sufficient evidence at trial to convict defendant of both child pornography offenses and the government's exhibits were admissible at trial. Now, taking each issue in turn, starting first with sufficiency of the evidence. How I read the brief is that the two arguments that the defendant raised is that first, Mr. Crusoe was not responsible for the Mr. Charlie Hussle account. He therefore did not distribute or access Pinterest with the intent to view child pornography. The second issue then, under the sufficiency analysis, is the claim that uploading child pornography to a shared Pinterest folder does not constitute distribution. So turning to the first issue here, the record establishes that Crusoe utilized the Mr. Charlie Hussle 7 Pinterest account. First, the Pinterest account identifiers clearly link to Mr. Crusoe. The email address associated to the Pinterest account is tcruso13200 at gmail.com. Notably, the defendant's name is Timothy Crusoe. Additionally, the username associated with this account is tcruso13200. Notably, too, the point of Pinterest is for users to curate content from the internet, place it onto their boards, and as such, the curated content on the Mr. Charlie Hussle account aligns with Mr. Crusoe's interests. That being such things as tattoos, art, drawing, Illinois-based sports team, female child erotica, and age-difficult pornography. So the Pinterest account identifiers clearly link Mr. Crusoe to this Mr. Charlie Hussle account. Additionally, Your Honors talked about the IP addresses. There are two IP addresses here and dates that are significant. First being the date the Pinterest account was created, and that's November 12th. That IP address links back to the AMCO location at 72nd Street, and that is where Mr. Crusoe works. In fact, there's testimony at trial from Mr. Rohrer that Mr. Crusoe was working that day. Second IP address of significance is the date of the uploaded child pornography, that being December 24th. That IP address geolocates back to the Rohrer residence of which Mr. Crusoe is there that day. So Mr. Crusoe is the only person that... If I understood Appellant's argument on his initial presentation, it seems to imply that there's enough here to have been able to conclude that Rohrer was as much a suspect here as Mr. Crusoe. Why is that not... Why wouldn't that have created enough doubt with the circumstantial evidence here to keep the evidence from being sufficient for a conviction? Thank you, Your Honor, for raising that point. Mr. Rohrer testified at trial. So he's claimed at trial that he was not at that 72nd Street location on November 12th, the day the Pinterest account was created. He testified that he does not have a Pinterest account, that he had never accessed defendant's accounts, devices, Pinterest, what have you. There is no evidence the government would submit that Douglas Rohrer is the person that uploaded the child pornography. And the jurors were free to weigh the credibility of Mr. Rohrer because they heard him testify. Now, additionally, Your Honor, I would submit that the T. Crusoe Google records for that Gmail account overlap with the Pinterest account. There are 50 to 70 images that are found on both the Gmail account of T. Crusoe and the Pinterest account. Additionally, the creation of the T. Crusoe Gmail account and the Pinterest account are one day apart from each other. So the content overlap and the creation date overlap also points to Mr. Crusoe. Fourth... Can I ask you about the Pinterest board itself? I know this is moving a little into distribution, but my understanding is this was a private board and you have to let people in. And I don't know exactly who created the board, but if he were... And some people actually use Pinterest to organize things, I think. So he could have... If he would have uploaded it to a board, but only he could access the board, you would agree that's not distribution, right? Well, Your Honor, I think there's a circuit split on that issue, as long as other people had access to it. Now, if it was a private board that just he had access to, it's debatable. And I think that'd be a difficult argument for the government to make. So then did other people... Was there evidence that other people actually had access to this private board? Not the whole world, but at least one other person could access the picture. We submit that it is, Your Honor. And I'll move to that issue here. So we submit that uploading child pornography to a shared private board constitutes distribution. As a threshold matter, the defendant... It's shared. It's shared, Your Honor. So getting into that, it's not Mr. Crusoe's board. It is somebody else's board. This board was not in his boards, the results that came back from Pinterest. So it is somebody else's board. It has to be. And additionally, how it's shared... Judge Strauss, you talked about the user chats with username redacted. I'll just use that for short. That is notable. And that conversation in and of itself establishes that it's shared. On the day the child pornography is uploaded to this little board, the board entitled Little, Mr. Charlie Hustle has a conversation with multiple users. But of particular interest is this username redacted. That day, he has three kind of separate conversations that they're kind of a continuation of each other. So the first is Mr. Crusoe asking the user where he can find quote-unquote sexy littles. Username redacted responds, quote, on there. And then, quote, you're added. You're added implies that Mr. Crusoe was invited to a board. You're added to this. You need to be added to a board that's not your own. So mechanically speaking, if redact is the administrator, if it's his board, he can then allow Charlie Hustle, that moniker or whatever, but into that board and give him full access to the board. He has to. If it's a private board, somebody else needs to invite you into that. And the Pinterest individual at trial testified to these types of restrictions and user features on the Pinterest platform. So that's the first part of the conversation. And they reinitiate conversation later, Mr. Crusoe again on that same day. And here he's asking username redacted about a specific little girl that he wants images of because his underage collection of pornography he no longer has access to. So username redacted responds to Mr. Charlie Hustle's inquiry on this and says, quote, I put her on there. On there implies the shared board. And in fact, Crusoe acknowledges the shared access by stating, quote, I know, but I want to find more of her and I need your help, especially naked. No more conversation takes place until later in that same day, notably four minutes before the child pornography image is uploaded to the board little. Mr. Crusoe reaches, in the form of Mr. Charlie Hustle, again reaches out to username redacted and states, and I quote, please find her and I, excuse me, please find her and can I post nudes on our littles board? Notably, the languages in here establishes that it's a shared board. First, post indicates distribution. He wants to post on this board. Nudes indicates something of pornographic in nature images. What's key here is that Mr. Crusoe describes the board, the littles board, which is where the child pornography. It would only be true if it was a minor, right? Correct, Your Honor. Correct. And the, he describes the board as R. It's R littles board. Can I post this image on R littles board? That establishes that this is a shared board, let alone the fact that it's somebody else's board to begin with. So for these reasons, Your Honor, the jury could reasonably find that Crusoe posted child pornography onto a board that was accessible to others. Did he post it after that last part of the chat you read? Yes, Your Honor. It's four minutes after that chat is when the cyber tip indicates that the Mr. Charlie Hustle account uploaded the child pornography onto that board littles. Now, Your Honor, additionally, there's the second child pornography conviction here, and that's access with intent to distribute. Again, the crux of defendant's argument here is that he is not the Mr. Charlie Hustle account for reasons we already articulated. Why charge it that way with the Pinterest post that he had access to it? Did you never recover the phone? Is that the problem where he would have presumably had the photo on his phone as well? So he would have been in possession of child pornography, one would think. Well, and to be candid, Your Honor, I'm coming in on the appeal here, so I was not there for the charging decision. But the image of the child pornography is not located on the boards. It's not on the device. It's not on the phone. It is in the cyber tip from Nick Nick. I see. So that is why I would presume a possession charge was not included. Okay. Now, in addition to Mr. Charlie Hustle account being Mr. Caruso, I'd also submit that the chats with between Mr. Charlie Hustle and additional users, along with the Mr. Charlie Hustle account search terms, also establish that there's sufficient evidence that he accessed Pinterest with the intent to view child pornography. Now, turning to the argument of whether the government's exhibits at trial were admissible, we submit that they were. In particular, there's four exhibits that the defendant claims were not admissible, government's exhibits three, four, five, and six. Notably, only government's exhibits three and four were objected to at trial. Government's exhibits five and six were not. As such, government's exhibits three and four are reviewed under the abuse of discretion standard, while government's exhibits five and six are reviewed under the plain error standard. Regardless, all four exhibits are admissible under 404B. You know, I didn't see the government argue plan or preparation. It seems like a lot of these chats are the plan or preparation for eventually, whoever Charlie Hustle is, and, you know, we got to decide that. But our plan or preparation for putting on the pornographic, the child pornography. But I didn't see the government argue plan or preparation. Yeah, I think the main, in terms of 404B evidence, that plan and preparation is part of the laundry list of items that the government could have argued. What was the focus was more, I guess, would say motive, intent, lack of mistake. And that's exactly what we have here. So government's exhibits three and four, those are Mr. Charlie Hustle's profile and then his Pinterest boards. And so here, his defense at trial, and as it is today, is that somebody else did this. It was not me. So those exhibits showed that these curated Pinterest boards align with Mr. Caruso's interests. They are him. There is no lack of mistake here. This is Mr. Caruso in charge of the Mr. Charlie Hustle account. And I would point the Court's attention to, as we did in the brief, that it's the United States v. Bartunek. It's a 2020 case from this circuit where it found it's a very analogous situation, same situation where the defense is arguing the same theory of defense that somebody else did it. And so this Court found that the photographs were admissible there in question to disprove that, along with showing motive and intent. Now, any abuse of discretion for those two issues of what exhibits, rather, would have been harmless and cured through any limiting instructions which were given. Every time government's exhibits three and four were referenced, the District Court provided a limiting instruction directing the jurors, hey, this evidence is only being admitted for these limited purposes. It is in and of itself not illegal or constitutes child pornography. Now, Counselor, you walked us through the steps to his posting. Is there any evidence that he invited anybody to where he had posted? Your Honor, there is not evidence of that, but because it is somebody else's Pinterest board, he would not, it's my understanding that he would not have the capabilities to do that. Yeah. From the owner of the board. Correct, Your Honor. That's my understanding. Now, lastly, Your Honors, it was not plain error to admit government's exhibits five and six. These were the chats and questions that we've discussed, along with search terms that the Mr. Charlie Hussle account had done leading up to the distribution of the child pornography, for the same reasons I articulated for government's exhibits three and four. Those were also shown, used to show motive and intent and lack of mistake. So, Your Honors, if you have no further questions, we would submit that the court should affirm the district court's rulings in this case. Thank you very much. Thank you, Counsel. I'll call your attention to exhibit number one, which basically is the Cyberline report, and you'll find at page two of the Cyberline report, in connection with the uploaded information with the 23 as the IP address on September, excuse me, December 24th, 2018, that the board is entitled little. So, what I'm saying is that if you follow the government's argument, or at least to that point, and the Charlie Hussle name is used as the owner of the board, it would seem to me that it isn't. The board is not somebody else's board. It's the first time I've heard that. It's not, for this board, if it existed, which it did, in Pinterest, it was not owned by a third party. It was, and just, it's shown right here. That little, the title of little is shot, is- What do you think the word our meant? O-U-R. I have trouble saying it, but O-U-R. It says it's our board. I, you know, I assume that our, it means greater than one. Yeah, I- But, I mean, does that mean that Mr. Caruso was an owner of it? Oh, okay. All I'm saying is the evidence in this case, which exhibit number one, shows the owner to be Charlie Hussle, or somebody at Charlie Hussle. It's not another board owned by somebody else. For, and if you follow that, then my argument is that he, that whoever was operating this situation, my client did not, there is no evidence that my client uploaded this image, and that he transported this image. The only evidence that they, that the government has of transporting, is the one that they relied on here today, and that is to construct this conversation with people in, remember, this comes off Google. This doesn't come off, this is, this was all checked by Google. Google had looked at all of this. Google found no Charlie Hussle ever mentioned on the defendant's Google, none. Never mentioned on his Google account. They, and they ran all his accounts, and never found one Charlie Hussle. And anyway, as far as the trial of this case is concerned, I believe, I think that the finding any evidence that directly linked my client to the event, the uploading and the distribution, except what they basically contain in Exhibits 3, 4, 5, and 6, and it's interesting with Number 6, if you look at the phone calls that the government wants to rely on, he could never have uploaded during that time. That couldn't have happened. He was on the phone, or he was in, he was in texting. You want, if the government likes to talk about that, those conversations, well they, they wouldn't, if he was uploading that image during those conversations, which I find that he could not have done, but arguably did, and never mentions it, never, to your point, Your Honor, never, never talks about it. I think that would, that's a crucial, that, that evidence cuts in our favor. Thanks very much. Thank you, Mr. Bradford. Thank you also.